NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **ELIZABETH FRANKLIN,** | : | |
| | : | Civil Action No.  06-cv-5709 (PGS) |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **OPINION** |
| **COMMISSIONER OF SOCIAL** | : | |
| **SECURITY,** | **:** | |
| | : | |
| Defendant. | : | |

**SHERIDAN,  U.S.D.J.**

This action is a timely appeal from a denial of benefits by the Commissioner of the Social Security Administration (hereinafter "Commissioner" or "Agency") pursuant to 42 U.S.C. 405(g). Plaintiff, Elizabeth Franklin ("plaintiff" or "Franklin") seeks a review of the final decision of the Agency terminating her Disability Benefits as of December, 2002.

As part of the disability process, plaintiff's condition is continually reviewed in order to determine if her medical condition has improved.  In December, 2002 the Agency found plaintiff had recuperated, and could return to work at a "medium"exertional range.  (R. 27, 37-46).

Thereafter, plaintiff requested reconsideration of her disability cessation.  At that time, she alleged pain and swelling in her leg, mental illness (depression) including outbursts of anger and paranoia. (R. 109, 121, 123).  Her request for reconsideration was denied as it was determined that her condition had medically improved since the comparison point decision ("CPD") of  May 29,

1

1996. ALJ Michal Lissek conducted a hearing, and issued her decision affirming same on March 30, 2006.                                        I.

Plaintiff is 46 year old woman who was born on March 15, 1961. She has a high school education, and two years of college. (R. 300). She previously worked as a corrections officer, as a worker in the catering department for an airline, and was in the military for six years. (R. 300-02).

Plaintiff was awarded disability benefits effective February 19, 1995 due to injuries sustained as the result of a motorcycle accident. More specifically, plaintiff suffered from an open left tibia fracture and left shoulder trauma. As of July 24, 1995, there was a non-union of the left tibia and plaintiff underwent dynamization of the left tibia, intramedullary rod and fibulectomy. As of January 16, 1996, the fracture site still did not show a solid union. (R. 40). Her impairment equaled medical listing 1.11 of Appendix 1, Subpart P, Regulations No. 4 and she was awarded benefits from the date of her accident.

At some point in 2000, the Agency attempted to contact plaintiff in order to review her case. After nearly two years of delay, the review was undertaken. (R. 207, 208). At that time, plaintiff completed a form entitled "Report of Continuing Disability Interview". Within the report, she stated that she was "walking a lot better. I have a slight limp but still can't stand for too long. My legs swell." (R. 96). When asked "Do you feel you are able to return to work," plaintiff responded "Yes" and "I feel I could do some work that did not require long periods of time on my feet." (R. 100). She reported that she can not stand or walk long distances and that she had been taking Tylenol and Advil for her pain.

Plaintiff further noted that she suffered from bipolar depression for the past two years and that she had been hospitalized once for that condition. She denied suicidal ideation. She takes

Wellbutrin once a day, but discontinued Risperdal as it made her nauseous.

Plaintiff is single and living at home with her parents.  She has a history of alcohol and cocaine abuse, but has not done so since 1987.  Plaintiff can cook, clean, do laundry, shop, take a shower, bathe, and dress herself.  However, she is unable to manage money on her own.  Plaintiff does not socialize because of her mental illness, and spends most of her time watching television, listening to the radio, and reading.  According to plaintiff she has not worked since 1995 (this is more fully discussed below).

A consultative orthopedic examination on behalf of the Agency was conducted by Dr. Lin on October 9, 2002.  At that time, plaintiff noted her history and disclosed that she had dislocated her shoulder two or three times subsequent to her motorcycle accident in 1995.  Dr. Lin found that plaintiff was in no acute distress.  Her gait was normal, she could walk on heels and toes and squat. She got on and off the examining table without assistance.  She rose out of a chair without difficulty. She had full flexion and extension of the cervical spine, and full rotary movement bilaterally.  There was no cervical pain or spasms.  She had full range of motion in her shoulders, elbows, forearms and wrists and there was no joint inflamation.  Strength was 5/5 in proximal and distal muscles.  There was no muscle atrophy or sensory abnormality.  Her left tibia/fibula x-ray showed hardware transfixing and stabilizing fractures at the left tibia and fibular fractures.  Dr.Lin diagnosed left leg pain with a history of surgery; history of left shoulder dislocation.  Her prognosis was fair.  Dr. Lin concluded that plaintiff had no physical limitations based on her examination.  A Physical Residual Functional Capacity Assessment dated December 5, 2002 found that based on examining source statements in the record, plaintiff could perform medium exertional tasks. (R. 229).  Plaintiff was referred for a psychiatric evaluation to assess depression and bipolar disorder. (R. 214-217).

Dr. Klahr, a consulting psychiatrist, examined plaintiff on November 21, 2002. At that exam, plaintiff acknowledged cocaine abuse in 1987. She attends Narcotics Anonymous but had no sponsor or group home, and presently did not drink or take drugs. At some point after her grandmother's death, she became withdrawn and angry. As a result, in July, 2001, she underwent treatment with Dr. Dawn Morris (psychologist) at Trinitas Hospital, and with Dr. Gorman (psychiatrist) for medication. (R. 261-62, 235-64). At that time, plaintiff complained of feeling depressed due to the death of her grandmother one year earlier, with symptoms of poor sleep, poor appetite, and weight loss. Dr. Gorman diagnosed major depression, single episode. Treatment notes from a August 13, 2001 session with Dr. Gorman indicate that plaintiff had "substantial improvement" and that her depression was "much improved on Wellbutrin." (R. 258).

At the time of Dr. Klahr's examination, plaintiff took Wellbutrin SR and Trazodone 50 mg once a day. Plaintiff indicated that she only took her medications about twice a week, and that her prescribing physician was aware of her practice. Her mood was fair, although she was still somewhat angry and upset. Her speech was clear, coherent and goal directed. There was no evidence of delusions or hallucinations. Her attention, concentration and memory were intact. She was of average intelligence with limited insight and fair judgment. She could follow instructions and perform simple tasks in a structured environment. She had difficulty getting along with people, and Dr. Klahr indicated that she probably has difficulty with more complex tasks in a competitive work environment.

A Mental Residual Functional Capacity Assessment of plaintiff on December 4, 2002 found that plaintiff could perform unskilled entry level jobs. (R. 270-272). The assessment noted that she is moderately limited in (a) her ability to interact appropriately with the general public; (b) the ability

4

to ask simple questions or request assistance; and (c) the ability to accept instructions and respond appropriately to supervisors. Despite same, she can maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. She is moderately limited in the ability to respond appropriately to changes in her environment, and to set realistic goals or make plans independently of others. The assessment concluded that plaintiff could perform unskilled entry level jobs.

Plaintiff underwent more psychiatric treatment subsequent to Dr. Klahr's exam and assessment. Plaintiff had become more irritable, easily provoked, and argumentative. As a result, her friends recommended that she resume medications. On March 6, 2003, Dr. Gorman noted that plaintiff had been off medications for one year. Dr. Gorman's diagnosis was major depression, single episode.

On January 31, 2003, plaintiff attended individual therapy sessions with Dr. Smith-Morris. The treatment notes indicate that resuming medications was discussed with plaintiff, but that she was ambivalent about same. (R. 237). Treatment notes from March 4, 2003 indicate that plaintiff was excited about "being hired for full-time food service job." (R. 236). At that time, Dr. Morris and plaintiff "explored the pluses and minuses of her return to work and perceived ability to sustain a schedule." (R. 236).

At the hearing, plaintiff testified she worked at the PGA tournament in Springfield for seven days in 2005 as a cook's helper where she earned $454.32 in one week. (R. 312). Plaintiff denied any other work; but there were earning records indicating that plaintiff earned $14,041.38 in 2003, and $16,541.96 from Sodexho Management in 2004. As noted above, Dr. Smith-Morris's notes contained references to plaintiff's excitement at being hired for a full time food service job. Plaintiff

denies that she worked, and contends that an unidentified woman used her social security number to obtain work.

## II.

Review of the Commissioner's final decision is limited to determining whether the findings and decision are supported by substantial evidence in the record. *See Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999); 42 U.S.C. § 405(g). The Court is bound by the ALJ's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hartranft*, 181 F.3d at 360 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation omitted)); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is less than a preponderance of the evidence, but more than a mere scintilla. *Richardson*, 402 U.S. at 401; *Morales*, 225 F.3d at 316; *Plummer*, 186 F.3d at 422. The reviewing court must view the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).

> A single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

*Morales*, 225 F.3d at 316 (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983)); *Benton v. Bowen*, 820 F.2d 85, 88 (3d Cir. 1987). A reviewing court will not set a Commissioner's decision aside even if it "would have decided the factual inquiry differently." *Hartranft*, 181 F.3d at 360. But despite the deference due the Commissioner, "appellate courts retain a responsibility to

6

scrutinize the entire record and to reverse or remand if the [Commissioner]'s decision is not supported by substantial evidence." *Morales*, 225 F.3d at 316 (quoting *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981)).

III.

After a claimant has been receiving disability benefits for some period, the Commissioner is required to review a claimant's case periodically to determine whether there has been any medical improvement in the claimant's condition and whether that improvement affects his/her ability to work. If the benefit recipient's condition has improved, eligibility to receive those benefits may terminate. 42 U.S.C. § 423(f). The regulations provide specific steps for an ALJ to follow in order to determine if a claimant's disability continues. 20 CFR § 404.1594(f). The parties agree that the ALJ followed the appropriate six step test.[1]

The first step is to determine whether plaintiff is engaging in substantial gainful activity. The ALJ did not clearly answer this inquiry. Claimant was found to be disabled as of February 19, 1995. The record shows that she had reported earnings in the following years:

2000 - $3,213.52

2001 - $874.47

2003 - $14,041.38

2004 - $16,541.96

2005 - $454.32

---

[1]      The plaintiff does not contend that plaintiff's psychological condition should be evaluated pursuant to a different regulatory test (20 CFR § 404.1520) since it was not present at the time disability was granted; therefore, there is no comparison point decision to which one may refer.

However, as previously stated, plaintiff denies that she worked, and avers that some unknown person used her social security number in order to obtain work. Rather than making an explicit finding about whether plaintiff engaged in substantial gainful activity, the ALJ gave plaintiff the "benefit of the doubt" with regard to employment, and without further explanation, moved on to step two.

The second step is to determine if any of her impairments equal the criteria of Appendix 1, subpart P, Regulation 4. The ALJ considered specifically the listings in sections 1.00 and 12.00 and found that the evidence failed to satisfy the criteria. From the Court's review of the record, there is substantial evidence supporting the conclusion of the ALJ. Most notably, the consultative examinations of Doctors Lin and Klahr, and the mental and physical functional capacity assessments support the findings.

Having determined that claimant has no current impairment meeting or medically equaling a listed impairment, the ALJ determines at step three whether there has been medical improvement, or a decrease in medical severity of impairments, from the time of the CPD. There is substantial evidence supporting that a decrease in medical severity occurred. Dr. Lin indicated that plaintiff's "condition had medically improved" and her gait and ability to stand were normal. Plaintiff also candidly declared that she could perform some work. These findings all demonstrate that plaintiff had considerably improved since the CPD.

Having found that plaintiff had medically improved, the ALJ considers whether such medical improvement was related to plaintiff's ability to do work (step four). The ALJ relies on Dr. Lin's findings, as well as claimant's statements that she can cook, clean, do laundry, shop, bathe and dress herself independently. The ALJ concluded that "such improvement in the claimant's physical condition shows clear medical improvement related to an ability to do basic work related functions."

The mental and physical functional capacity tests conclude similarly, and Dr. Gorman found her depression to be a single episode, which indicates there was no permanancy. Hence, there is no suggestion of chronic mental incapacity, and her leg has improved. Accordingly, there is substantial evidence to support the ALJ's findings.

At step six,[2] the ALJ weighed whether plaintiff's current impairments were "severe" enough to impose significant restrictions on her ability to perform basic work activities. The ALJ found that there was no evidence that the claimant currently suffered from such a disabling physical impairment; but she noted some concerns about plaintiff's mental state:

> although there has been improvement in the claimant's overall condition, she does still have certain limitations. The current evidence demonstrates that although the claimant's physical condition has improved significantly, she now suffers from mild depression. The treating notes in Exhibit 12F note that the claimant suffers from a "mildly depressed mood with congruent affect." The claimant's diagnosis is noted to be major depression, single episode, and the treatment notes reveal that the claimant was depressed over the death of her grandmother. The claimant's depression does not seem to be an ongoing problem, however, and it is noted by both the treatment notes and the claimant's statements to improve with medication.

These findings are supported by the record. Dr. Klahr and Dr. Lin indicated plaintiff could work. Although there are some restrictions, the mental and physical residual functional capacity tests confirmed that plaintiff can perform unskilled entry level work.

The next step is to determine whether plaintiff's impairments have precluded her from performing her previous work activities. The ALJ concluded that plaintiff's previous relevant work was as a food service worker/caterer's assistant without stating how she determined this. If the ALJ

---

[2]     Due to the finding at step four, the ALJ correctly skipped to step six.

9

considered plaintiff's earnings for the years 2001-2005, this conclusion is inconsistent with the ALJ's determination in step one to "give her the benefit of the doubt" about whether she actually worked in those years. It is perplexing to "give her the benefit of the doubt" that plaintiff did not work in those years, and then to find relevant plaintiff's past work as caterer's helper in the food service industry based upon the same years. Assuming the ALJ concluded at step one that plaintiff did not work in those years, then the ALJ must determine plaintiff's past relevant work in accordance with 20 CFR § 404.1565. This regulation requires the ALJ to evaluate all work within the past fifteen years. The regulation states in part:

> We consider that your work experience applies when it was done within the last fifteen years, lasted long enough for you to learn to do it, and was substantial gainful activity.

The ALJ must clarify her findings of fact, and based upon same, review her decisions at steps one and six and explain them more fully. *See* CFR § 404.1565. These inconsistent findings require that the matter be remanded for clarification. The ALJ's decision must expressly state whether evidence has been accepted or rejected; otherwise, "the reviewing court can not tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981); *Hargenrader v. Califano*, 575 F. 2d 434 (3d Cir. 1978). Nothing herein expresses any opinion as to whether giving the plaintiff "the benefit of the doubt" is appropriate for those years; but whatever the ALJ decides on this factual determination, it must then be consistently applied.

The matter is remanded for proceedings consistent with this Opinion.

_____
PETER G. SHERIDAN, U.S.D.J.

November 16, 2007